Filed 1/21/21  Chhatrala Investments, LLC v. Elajou Investment Group, L.P. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHHATRALA INVESTMENTS, LLC, Plaintiff and Appellant, v. ELAJOU INVESTMENT GROUP, L.P. et al., Defendants and Respondents. | D074840 & D076341 (Super. Ct. No. 37-2016-00038312-CU-BC-CTL) |

APPEALS from a judgment and an order of the Superior Court of San Diego County, Joan M. Lewis, Ronald F. Frazier, Judges.  Judgment affirmed.  Postjudgment attorney fees order affirmed in part and reversed in part.

Vivoli Saccuzzo, Michael W. Vivoli and Jason P. Saccuzzo for Plaintiff and Appellant.

Law Office of Christopher T. Wright and Christopher T. Wright for Defendants and Respondents Elajou Investment Group, L.P., Juma Elajou and Broadway87CDev, LLC.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall, S. Todd Neal and Zagros S. Bassirian for Defendant and Respondent Zephyr Partners-RE, LLC.

Chhatrala Investments, LLC (Chhatrala), a real estate investor, sued several other investors seeking the return of about $1.79 million of its funds and to recover a profit share from the sale of a large downtown San Diego commercial parcel.[1]  Chhatrala claimed its agent had invested these funds without authority, and this agent later entered into a settlement agreement with defendants (or their related entities) without Chhatrala's knowledge or consent.

In its third amended complaint, Chhatrala alleged eight causes of action, asserting contractual, tort, common count, and equitable theories as grounds for its claimed right to a monetary recovery.  The court sustained defendants' demurrers without leave to amend, and entered judgment in defendants' favor.  The court later granted defendants' attorney fees motions under fee provisions in a settlement agreement and an attached promissory note.  Chhatrala appealed from the judgment and then appealed from the attorney fees order.  We consolidated those appeals.

We affirm the judgment.  Chhatrala has not alleged a viable cause of action against defendants and thus the court properly sustained the demurrer.  We reject Chhatrala's contentions the court abused its discretion in denying it leave to amend and in temporarily staying discovery.

On attorney fees, the court awarded defendant Zephyr $227,734.32, and awarded the remaining defendants $75,262.32.  We reverse the attorney fees order as to Zephyr because Chhatrala's claims against Zephyr were not "on a contract" or within the scope of the attorney fees provision.  We affirm

---

[1]     Defendants are Elajou Investment Group, L.P., and its managing member Juma Elajou; Zephyr Partners-RE, LLC (Zephyr); and Broadway 87CDev, LLC (Broadway).  Chhatrala also named Elajou Group, LLC (Elajou Group), but did not serve this party.

the order as to all other defendants because Chhatrala unsuccessfully sought to enforce a contract against these defendants (and/or their principals or agents) and the contract contained an attorney fees provision.

FACTUAL AND PROCEDURAL BACKGROUND

We base our factual summary on Chhatrala's third amended complaint, the incorporated documents, and judicially noticed matters. (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1172-1173.) We disregard factual assertions in the parties' briefs that are based on sources outside this rule. We assume the truth of the alleged facts, unless they are contradicted by information in the current or prior pleadings. (*Ibid.*; *Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1044-1045 (*Banis*).)

*Facts Alleged in Third Amended Complaint*

This matter arose from real estate investments in a downtown San Diego parcel referred to as the Waterfall Property (between Broadway, C Street, Seventh Avenue, and Eighth Avenue). Defendant Elajou Investment Group previously owned or controlled this property. Defendant Mr. Elajou was Elajou Investment Group's managing member and allegedly its alter ego. When we refer to Elajou Investment Group we include Mr. Elajou unless the context provides otherwise.[2]

---

[2]     Defendants contend *Elajou Group* owned the Waterfall Property, and not *Elajou Investment Group*. Elajou Group was named as a defendant late in the proceedings, but was never served. For purposes of demurrer analysis, we assume the truth of Chhatrala's assertions and accept that although Elajou Group may have been the legal title owner, Elajou Investment Group had indirect ownership interests through its relationship with Elajou Group. This fact was essentially admitted by defendants Elajou Investment Group and Mr. Elajou, when they alleged in *their* cross-complaint filed in this case that **they**, "*through a sister entity, Elajou Group, LLC,* **owned** *that certain real estate development project called the 'Waterfall [Property].'*" (Boldface and italics added.) For purposes of this opinion, references to Elajou

At some point before 2014, Jenish Patel (a relative of Chhatrala's managing member) invested "substantial sums" (the complaint does not identify the amount) in Elajou Investment Group. The funds belonged to Chhatrala and they were invested without Chhatrala's knowledge or consent. Elajou Investment Group knew Chhatrala was the source and owner of these funds, and that Patel lacked authority to bind Chhatrala to any agreement. At the time, Elajou Investment Group was having financial problems and the funds were "instrumental in saving [its] interest in the Waterfall Property" pending a sale of the property.

During this time, Elajou Investment Group (through its "sister" entity, Elajou Group) signed separate contracts with two different parties to sell the Waterfall Property: defendant Zephyr and TRX Holdings, LLC (TRX). TRX is Chhatrala's investment partner. TRX then sued Elajou Group and Zephyr seeking an order compelling the property to be sold to TRX rather than Zephyr. Chhatrala was not a party to that lawsuit.

On June 10, 2014, Elajou Group (identified as the "Seller" of the Waterfall Property) entered into a written settlement agreement (Settlement Agreement) with three other parties: TRX, Zephyr, *and* Chhatrala. The Settlement Agreement identified the TRX lawsuit and the fact the four parties had "various other claims against each other relating to the [Waterfall] Property" (these claims were collectively defined as "the Dispute") and that the purpose of the Settlement Agreement was "to resolve the Dispute" under specified terms.

These terms included: (1) the TRX purchase contract shall terminate and TRX shall dismiss its lawsuit with prejudice; (2) Zephyr or its designee

Investment Group include Elajou Group, unless the context indicates otherwise.

4

shall purchase the Waterfall Property; and (3) "through a combination of cash, check and a secured note, [Elajou Group] shall return to TRX and Chhatrala the sum of $3,343,291, representing all but $40,000 of the TRX Disbursements, plus an additional $250,000 to compensate TRX and Chhatrala for their lost profits . . . ."

On the latter term, the parties agreed Chhatrala would be compensated through a promissory note written to "Chhatrala *or its designee*." (Italics added.) The Settlement Agreement stated the note amount would be the difference between $3,343,291 and the "Cash Proceeds," defined as the amount of cash received from the Zephyr purchase. With respect to this promissory note, paragraph 7 of the Settlement Agreement states:

> "<u>Delivery of Note to Chhatrala or Designee</u>. Upon the execution of this Agreement, Seller shall cause El Ajou (or, if requested by Chhatrala, Elajou Investment Group . . . ) to execute the [attached] Secured Note . . . in favor of Chhatrala *or its designee*. The principal amount of the Note shall be the sum of (i) the difference between $3,343,291 and the Cash Proceeds [defined as the cash amount owed by Zephyr to Elajou Group on closing], plus (ii) . . . $250,000. The Note shall bear interest at 10% per annum, and be due and payable in one lump sum on the earlier of (i) the second anniversary of the Closing Date or (ii) the date a construction loan is recorded against the Property." (Italics added.)

The attached five-page note (Note) identified Falcon Financial, LLC as the sole "Payee" on the note, and Elajou Investment Group as the "Maker" of the Note. The Note began:

> "T[his] . . . Note is entered into as of [June 10, 2014] by and between Elajou Investment Group . . . ('Maker') and Falcon Financial, LLC, a Wyoming limited liability company with a business address of . . . ('Payee') . . . .

5

> "A.  Payee has elected to carry back proceeds resulting from the sale of [the Waterfall Property] to Maker in exchange for Maker's agreement to pay Payee . . . $1,314,291.
> [¶] . . . [¶]

> "1.  Payments.  Maker shall pay to Payee . . . the unpaid principal balance owing under this Note [with accrued interest] no later than . . . the earlier of (i) June 10, 2016 or (ii) the date a construction loan is recorded against [the Waterfall Property]."

Although the Note identified $1,314,291 as the amount owed, the Settlement Agreement provided for adjustments to this amount depending on the specific amount of received Cash Proceeds.  The Note stated Elajou Investment Group would execute a deed of trust on identified residential property as security for the payment of the Note.

The Settlement Agreement had a broad "Release" provision releasing each party (and their affiliates) from liability on all matters "arising out of or related to the Dispute," including "any matters relating to (i) the [Waterfall] Property . . . and (ii) any other agreement or transaction between or among any of the Parties concerning matters arising out of or relating to the Property or against each other."  The Agreement provided the "scope of this release does <u>not</u> include claims arising from" the following:

> "(1) any breach by a Party of this Agreement; (2) any breach by the obligor(s) under the Note or Deed of Trust; (3) any disputes between or among TRX, Jenish Patel and/or Chhatrala (or any of their related entities, representatives, owners, members, partners, employees, agents, and affiliates) whether or not related to the Property; (4) any representations, warranties, covenants or indemnities between the parties to the Zephyr [sales agreement]; and (5) any joint venture or partnership between Zephyr and Seller or their affiliates with respect to development of the Property."

6

The Settlement Agreement contained a Civil Code section 1542 waiver, stating in part that "this Agreement constitutes a full settlement of the Dispute and a release of each Party's future claims that may arise from the Dispute, whether such claims are currently known, unknown, foreseen or unforeseen." The Agreement also had an integration clause, providing the "Agreement constitutes the entire agreement and understanding among the Parties regarding its subject matter and supersedes and replaces all prior negotiations, proposed agreements and agreements, whether written or oral." The Agreement also stated amendments must be in writing and signed by all parties.

The Note (with Falcon Financial, LLC (Falcon) as the identified "Payee") and the deed of trust were attached as exhibits to, and incorporated within, the Settlement Agreement. As detailed below, both the Settlement Agreement and the Note contained a prevailing-party attorney fees clause.

A representative of each of the four parties (Elajou Group, TRX, Zephyr, and Chhatrala) signed the Settlement Agreement. Patel signed the agreement on behalf of Chhatrala. The Agreement stated Patel "is the duly appointed and authorized agent and signer on behalf of Chhatrala."

In its pleadings, Chhatrala alleged Patel was "not authorized to sign on [its] behalf . . . ." Chhatrala claimed Elajou Investment Group and Mr. Elajou knew Patel lacked the authority to bind Chhatrala to any agreement or to sign any note, "yet [they] conspired with [Patel] to misappropriate [Chhatrala's] funds."

Two days after the Settlement Agreement was signed, Mr. Elajou, on behalf of "Elajou Investment Group," signed the Note, which was identical to the version attached to the Settlement Agreement except the amount was for

7

$1,797,982 (reflecting the specified adjustments). Mr. Elajou also signed the deed of trust on which Falcon was the named beneficiary.

Thereafter, Elajou Investment Group conveyed the Waterfall Property to Zephyr. Zephyr then allegedly failed to pay Elajou Investment Group the full amount owed, knowing this would prevent Elajou Investment Group from meeting its payment obligations to Chhatrala. Zephyr also allegedly withheld funds and "misrepresented the terms of its [later] sale of the [Waterfall] Property to a third party," also allegedly causing Elajou Investment Group to be unable to pay its debts to Chhatrala.

Chhatrala alleged it was unaware of the "foregoing facts and circumstances giving rise to this lawsuit . . . until approximately January of 2016." Chhatrala alleged that "thereafter, [Elajou Investment Group] . . . made representations to [Chhatrala] that were designed to induce, and did induce, [Chhatrala] not to file suit because of promised benefits Defendants had no intentions of remitting." Specifically (and as discussed in more detail below), Chhatrala alleged that on April 19, 2016, Mr. Elajou told Hemant Chhatrala, Chhatrala's managing member, that Elajou Investment Group would "share with [Chhatrala], on a 50/50 basis, all profits received by [Elajou Investment Group] from [its] ownership of the Waterfall Property and [its] joint venture with Zephyr" involving the development and resale of the Waterfall Property to a third party.

*Summary of Pleadings and Court Rulings*

About six months after this alleged oral representation, in October 2016, Chhatrala brought a lawsuit against Elajou Investment Group, Mr. Elajou, and Zephyr.

8

The first two causes of action were against Elajou Investment Group and Mr. Elajou and sought to enforce the Note and foreclose on the underlying security, claiming Chhatrala was owed $1,797,982.

The third cause of action (fraudulent transfer) was against all three defendants, alleging they fraudulently conveyed the Waterfall Property to a third party "for the express purpose of attempting to render [the Elajou defendants] judgment proof, or at least to insulate them from liability for the damages suffered by [Chhatrala]."

The fourth cause of action alleged Elajou Investment Group orally promised to pay Chhatrala 50 percent of the profits earned from the Waterfall Property transactions with third parties, in exchange for Chhatrala's agreement to invest the funds with Elajou Investment Group to "save" its interest in the property.

The fifth cause of action was a "common count" for money had and received, seeking to recover $1,797,982 plus one-half of the profits earned "from the disposition of the Waterfall Property . . . ."

The complaint (and all subsequent complaints) contained alter ego and agency allegations, asserting the named defendants and Doe defendants were agents, employees, and/or or alter egos of one another.

Zephyr demurred to the complaint, and instead of opposing the demurrer, Chhatrala filed a first amended complaint in March 2017 containing the same causes of action.

Shortly after, in May 2017, Elajou Investment Group and Mr. Elajou filed a cross-complaint against Zephyr.[3] They alleged Zephyr had paid them "a mere $4.9 million" for the Waterfall Property and had wrongfully held back $600,000 from the sales transaction. They alleged that "[b]y so squeezing [them] and depriving them of the $600,000 distribution . . . , the Elajous could not negotiate a satisfactory resolution of the [Note] and [the Note] continues to accrue interest . . . ." They further alleged that Zephyr's breach in "failing and refusing to provide [them] their $600,000" has caused them "damages including impact to the ability to service the [Note] . . . ." This cross-complaint was later referred to arbitration.

After the court sustained demurrers to Chhatrala's first amended complaint with leave to amend, Chhatrala filed a second amended complaint. This complaint contained the same causes of action, but also included three additional claims against Zephyr: intentional interference with contract, intentional interference with prospective economic relations, and unjust enrichment (labeled a "common count").

All three defendants (Elajou Investment Group, Mr. Elajou, and Zephyr) demurred to this complaint. The court sustained the demurrers without leave to amend on the causes of action for breach of the Note, foreclosure of the security, and fraudulent transfer. The court overruled the demurrers on the common counts (claims for money had and received and unjust enrichment). The court granted Chhatrala leave to amend on its claims for breach of oral agreement and intentional interference.

_____

[3] Respondent Broadway was also a cross-complainant. Chhatrala later added Broadway as a Doe defendant after filing the third amended complaint. Because Broadway's alleged liability was based only on alter ego allegations, our conclusions regarding Elajou Investment Group and Mr. Elajou apply equally to this defendant.

In March 2018, Chhatrala filed its third amended complaint retaining all eight prior causes of action, including the ones for which the court had sustained the demurrers. After defendants objected to Chhatrala reasserting the dismissed claims, the parties stipulated the sole purpose of doing so was to create a clear record for appeal.

Zephyr and the Elajou parties (Elajou Investment Group and Mr. Elajou) then each filed a demurrer. The court sustained both demurrers without leave to amend. The court based its ruling mainly on the release provisions in the Settlement Agreement; the fact Chhatrala was not a beneficiary or intended beneficiary of the Note; and that there was no enforceable contract or other economic relationship between the Elajou defendants and Chhatrala to support the interference claims. Although it had previously overruled the demurrers to the same common count claims (money had and received and unjust enrichment), the court reconsidered and concluded these causes of action were also barred by the Settlement Agreement.

As to defendant Broadway, the court stated that Broadway was "brought into the case as an alter ego," and because "the Court has concluded that no cause of action has been stated as to the named Defendants," Broadway has "no liability in this case."

The court denied Chhatrala's request for leave to amend, stating: "The Court has previously afforded [Chhatrala] two separate opportunities to amend and attempt to clarify why its claims are not precluded. Having failed to do so by way of the [third amended complaint], the Court concludes leave to amend should be denied." The court later awarded defendants attorney fees in a separate order.

11

## DISCUSSION

### I. *Review Standards*

A demurrer tests the sufficiency of a pleading as a matter of law. It is therefore "error for the trial court to sustain a demurrer if the plaintiff has stated a cause of action under any possible legal theory . . . ." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.) We apply a de novo standard in evaluating whether the complaint states a cause of action, and therefore we are not bound by, and need not consider, the trial court's reasoning. (*Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 813.)

"[W]e assume the truth of all facts properly pleaded in the complaint and its exhibits or attachments, as well as those facts that may fairly be implied or inferred from the express allegations. [Citation.] 'We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law.' " (*Cobb v. O'Connell* (2005) 134 Cal.App.4th 91, 95.) Facts contained "in exhibits attached to a complaint will . . . be accepted as true and will be given precedence over any contrary allegations in the pleadings." (*Banis*, *supra*, 134 Cal.App.4th at pp. 1044-1045.)

In reviewing the court's refusal to permit an amendment, we are governed by an abuse-of-discretion standard. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) The court abuses its discretion if there is a reasonable possibility an amendment would cure the defects. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.) It is appellant's burden to identify specific facts showing the complaint can be amended to state a viable cause of action. (*Baldwin v. AAA Northern California, Nevada & Utah Ins. Exchange* (2016) 1 Cal.App.5th 545, 559 (*Baldwin*).)

12

Under these review standards, we first consider each cause of action to determine whether the court properly sustained defendants' demurrers. We then address Chhatrala's claims concerning the court's denial of leave to amend and a discovery order. In the final section, we evaluate Chhatrala's challenges to the court's attorney fees order.

II. *Breach of Promissory Note and Foreclosure of Collateral*

In the first two causes of action, Chhatrala sought to enforce the $1.79 million Note and its underlying deed of trust against Elajou Investment Group (and its principal, Mr. Elajou).

Chhatrala contends the court erred in finding these claims were barred by the Settlement Agreement's release provisions because the release specifically excluded breaches of the Settlement Agreement, the Note, and the deed of trust. We agree with this argument. The Settlement Agreement did not bar the Note payee from bringing an action if the Note was not paid or its terms were otherwise breached.

But we find the court's ruling dismissing the claim was correct on another ground: Chhatrala had no standing to enforce the Note or its security because it was not a party to the Note. The Note was between Elajou Investment Group and Falcon, identified as the "Payee."

A nonparty to a promissory note has no standing to enforce the note. (See *Berclain America Latina v. Baan Co.* (1999) 74 Cal.App.4th 401, 404-405.) To the extent Chhatrala believes it *should* have been the payee on the Note, Chhatrala does not identify any contractual basis for this belief. Neither the Note nor the Settlement Agreement provides Chhatrala with any right to enforce the Note terms.

In its reply brief, Chhatrala suggests it was a proper party to enforce the Note because it was a third party beneficiary of the Note. It relies on the

Settlement Agreement's provision that the Note would be made "in favor of Chhatrala or its designee." Assuming Chhatrala did not forfeit this argument by failing to raise it in the opening brief and/or by arguing inconsistently in its attorney fees appeal,[4] we find the argument to be without merit.

Third party beneficiary status provides a noncontracting party with rights to enforce a contract *intended for its benefit*. (Civ. Code, § 1559.) Generally to establish third party beneficiary status, the party must show the contract was " ' "one in which it clearly appears that he [or she] was a beneficiary." ' " (*Levy v. Only Cremations for Pets, Inc.* (2020) 57 Cal.App.5th 203, 212.) The "contracting parties' intent to make the obligation inure to [their party's benefit] must have been 'clearly manifested.' " (*Schauer v. Mandarin Gems of Cal., Inc.* (2005) 125 Cal.App.4th 949, 957-958.)

The parties did not manifest an intent to make Chhatrala the beneficiary of the Note. The Settlement Agreement stated the payee on the Note would be Chhatrala *or its designee*. Once the Note was prepared to designate Falcon—and not Chhatrala—as the payee, *and* this designation was attached to and incorporated within the Settlement Agreement, Falcon became the sole beneficiary with the exclusive right to enforce the note.

Without additional facts such as an assignment or transfer of the Note, there is no basis to infer the parties intended two different payees on the same note. Falcon, and not Chhatrala, was the express and intended beneficiary of the Note.

---

4    In its brief challenging the attorney fees award in this case, Chhatrala asserts it "was not a third-party beneficiary to the Falcon Note and had no rights under it."

For these reasons, we conclude the court properly sustained the demurrer on the first two causes of action ("Breach of Promissory Note" and "Foreclosure of Collateral").

### III. *Breach of Oral Contract*

In the third cause of action, Chhatrala alleged a breach of oral contract claim against Elajou Investment Group and Mr. Elajou.

#### A. *Summary of Claim*

The factual basis of Chhatrala's oral agreement claim changed from the original complaint to the third amended complaint. In its initial pleadings, Chhatrala alleged an oral agreement between Patel (allegedly on Chhatrala's behalf) and the Elajou Investment Group that in exchange for Patel's investment of Chhatrala's funds, Elajou Investment Group and Chhatrala would share "on a 50/50 basis, all profits received by" Elajou Investment Group pertaining to its sale of the Waterfall Property.[5]

In the second amended complaint, Chhatrala alleged a similar factual scenario to support the oral agreement claim, but added that the funds would be due "within a reasonable time after a sale of the Waterfall Property." In its demurrer, Elajou Investment Group argued the Settlement Agreement's release and integration clauses barred the enforcement of any alleged promises made *before* the written settlement agreement.

At the demurrer hearing, Chhatrala's counsel said he could amend the pleading to allege that an oral promise was made *after* the Settlement Agreement was executed. Counsel said that when Mr. Chhatrala "found out about all this" (apparently referring to the Settlement Agreement) he went to Mr. Elajou, and Mr. Elajou allegedly responded, "Don't worry. You have a

---

5    Although the complaint did not identify Patel, Chhatrala's counsel later clarified the factual basis of this claim in a letter to opposing counsel.

15

promissory note. We will honor the promissory note. And yes, we've agreed to give you one-half of the profit that we get out of this venture."

After considering this proffer, the court granted Chhatrala leave to amend the oral agreement claim. The court's written order stated: "Plaintiff to plead, if possible, (1) the date when the alleged oral contract was made *and* breached; and (2) who from Chhatrala was a party to [the] contract."

In its third amended complaint, Chhatrala retained some of the allegations referring to the earlier alleged oral agreement, but also alleged that on April 19, 2016 (two years after the Settlement Agreement), Mr. Elajou told Hemant Chhatrala, Chhatrala's managing member, that "within a reasonable time" after "Zephyr and the Elajou defendants (as part of their joint venture)" sold the Waterfall Property to a third party, the Elajou defendants "would share with [Chhatrala], on a 50/50 basis, all profits received by [Elajou Investment Group] . . . in recognition of the fact [Chhatrala's] funds were instrumental in saving their interest in the Waterfall Property and in allowing it to participate in a joint venture with Zephyr on the development and resale of the Waterfall Property."

Chhatrala alleged it "fulfilled its end of the agreement when its funds were provided to the [Elajou] Defendants, enabling them to maintain their interest in the Waterfall Property, *and by refraining from suing the* [*Elajou*] *Defendants after learning its funds had been received by and retained by them, subject to their promise to return the funds in the future*. However, despite continuing promises to the contrary the Elajou Defendants have breached their promise to remit one-half of the profit earned by them through their share of any funds received for the sale of the Waterfall Property . . . . [The Elajou] Defendants breached their promises . . . in or about late September or early October 2016." (Italics added.)

16

The court sustained Elajou Investment Group's demurrer without leave to amend on this cause of action based primarily on its conclusion "the integration and amendments clauses . . . of the Settlement Agreement and Release bar this oral agreement."

B. *Analysis*

Chhatrala contends the court erred in concluding the breach of oral contract claim was barred by the Settlement Agreement because (1) Chhatrala was not bound by the Settlement Agreement as the agreement was signed by an agent without authority; and (2) even if it is bound by the Settlement Agreement, the oral agreement occurred after the Settlement Agreement and was supported by independent consideration.

As explained below, these arguments are without merit.

1. *Chhatrala was Bound by Settlement Agreement*

Generally, an agent has the power to bind a principal if the agent has apparent or ostensible authority to do so. (See *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403.) Apparent or ostensible authority depends on whether the third party reasonably believed the actor had authority to act on the principal's behalf. (*Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1087.) If a third party was on notice or had actual knowledge that the agent did not have authority, the principal is not bound by the agent's acts.

Applying these principles to the allegations of the third amended complaint, Chhatrala would not be bound by the Settlement Agreement because it alleged Patel had no authority to sign the agreement *and* Elajou Investment Group had actual knowledge that Patel lacked this authority.

But this does not end the analysis because this agency rule does not apply if the principal later ratifies the agreement. "Ratification is the

17

voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which . . . is to treat the act as if originally authorized by him. [Citations.] [¶] A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal . . . ." (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73.)

Elajou Investment Group contends Chhatrala ratified the Settlement Agreement by filing claims against it seeking to enforce the portion of the Settlement Agreement pertaining to the Note.

We agree. A principal ratifies an agent's unauthorized act by bringing an action seeking to enforce or otherwise benefit from the act. (See *Navrides v. Zurich Ins. Co.* (1971) 5 Cal.3d 698, 704 (*Navrides*); *Price v. McConnell* (1960) 184 Cal.App.2d 660, 665 (*Price*); see also *Alvarado Community Hosp. v. Superior Court* (1985) 173 Cal.App.3d 476, 482 (*Alvarado*); Rest.3d, Agency, § 4.01, com. h.) This rule derives from the principle that a single or indivisible transaction must be completely affirmed; the principal may not ratify the beneficial parts and refuse to affirm the rest. (Civ. Code, § 2311; *Navrides*, at p. 704; *Price*, at p. 666*; see NORCAL Mut. Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 81.)

Chhatrala argues this rule is inapplicable because it never asserted a right under the Settlement Agreement or the Note in its lawsuit. Chhatrala says its claim that Elajou Investment Group owed the $1.79 million was "independent of" these agreements. This argument is unsupported.

In its first and second causes of action, Chhatrala specifically sought to enforce the Note and deed of trust against Elajou Investment Group. The first cause of action, titled "BREACH OF PROMISSORY NOTE," alleges that Elajou Investment Group "breached *the Note* by failing and refusing to make

18

payment, despite [Chhatrala's] demands," and sought attorney fees "*[p]ursuant to Paragraph 13 of the Note.*" (Italics added.) Chhatrala also alleged the "Note" stated the amount was due "on the earlier of June 12, 2016, or the date a construction loan is recorded," and "as such" payment was due on June 12, 2016 because the property was conveyed before a construction loan was issued.

The second cause of action, titled "FORECLOSURE ON COLLATERAL," alleges Elajou Investment Group "defaulted *on the Note . . .* by failing and refusing to make the payments due *. . . . The Note provides that the Collateral . . . will serve as security for the Note* and the independent obligation evidenced by the Note, and that upon a default . . . the unpaid balance and all other amounts *due under the Note shall become due and payable and enforceable against the Collateral.* [¶] Plaintiff hereby seeks a judgment enforcing its rights against [Elajou Investment Group] for the sums evidenced by the Note against the Collateral, including an order of sale of the Collateral to pay the Note . . . ." (Italics added.)

In attempting to avoid the conclusion it was seeking to enforce the Note and its underlying security interest, Chhatrala relies on other statements in its third amended complaint denying it was bringing a claim under the Settlement Agreement or Note. For example, Chhatrala cites to its allegations that it attached the Settlement Agreement to the complaint "purely for background factual information, and not as evidence of an agreement by Plaintiff" and that it "does not contend by the filing of this complaint, that its right to repayment of the funds evidenced by [the Settlement Agreement] exists because of [the Settlement Agreement]. Rather, Defendants' obligation to return [Chhatrala's] funds existed—and currently exists—entirely independent of [the Settlement Agreement]."

19

We disregard these allegations because they reflect contentions and legal conclusions rather than asserted facts. (*McBride v. Smith, supra,* 18 Cal.App.5th at p. 1173.) Moreover, the allegations are undermined by the express language of the first and second causes of action, which plainly seek to enforce the Note and the accompanying deed of trust. Further, the fact that Chhatrala *also* claimed an entitlement to the $1.79 million on independent equitable grounds does not negate the conclusion that it ratified the Settlement Agreement by seeking to enforce it in the first two causes of action. Chhatrala cites no authority supporting that bringing other claims in addition to a claim seeking to enforce an alleged unauthorized agreement creates an exception to the ratification rule.

Chhatrala alternatively argues no ratification occurred because it did not receive the benefits of the Note. Chhatrala contends actual receipt of benefits by the principal is necessary to support a finding of ratification.

The argument is unsupported by applicable law. The courts have long held a party's bringing a claim in a lawsuit seeking to recover a monetary amount based on an alleged unauthorized settlement establishes the plaintiff intended to accept the benefits of the settlement, and have never suggested the plaintiff must *also* show the actual receipt of benefits. As our high court stated almost 100 years ago, "The law is well settled that, in case a principal *seeks to recover* upon a contract in which the agent exceeds his authority, he must take the contract as a whole." "[B]*y demanding performance of the contract,* [a party] [therefore] assumes responsibilities for . . . the representations, promises and conditions" in the contract. (*First National Bank v. Reed* (1926) 198 Cal. 252, 260, italics added.) In *Price,* the court likewise observed, " 'One of the most unequivocal methods of showing ratification of an agent's act *is the bringing of an action at law* based upon

20

the validity of such act.  The bringing of such an action manifests very clearly a determination to abide by the act, to regard it as valid, [and] to enforce its performance.' " (*Price*, *supra*, 184 Cal.App.2d at p. 666, italics added; accord *Navrides*, *supra*, 5 Cal.3d at p. 704.)

The facts in *Navrides* illustrate this principle.  (*Navrides*, *supra*, 5 Cal.3d 698.)  There, an attorney falsely told his client's insurer that she authorized a monetary settlement on her claims against the insurer.  (*Id.* at p. 701.)  The attorney then signed the insurer's settlement check, cashed the check, signed a request for dismissal of the client's claims, and retained the settlement funds.  (*Id.* at pp. 701-702)  When the client learned of this conduct, she sued the insurer seeking the settlement amount.  (*Id.* at p. 702.)  The California Supreme Court held the client's claim was barred because she ratified the attorney's actions by bringing the lawsuit seeking the settlement amount and "by so doing she necessarily approved" the insurer's delivery of the draft to her attorney.  (*Id.* at p. 703.)  The court thus found ratification despite that the plaintiff did not, and would not, receive any benefits of the settlement, unless and until she successfully brought suit against the third party wrongdoer (the attorney).

Chhatrala's reliance on *Alvarado* for a contrary conclusion is misplaced.  *Alvarado* represents a second—and independent—ground for establishing ratification:  a party's *obtaining* benefits from the unauthorized agreement.  (*Alvarado*, *supra*, 173 Cal.App.3d at pp. 480-484.)  The *Alvarado* plaintiff had sued a hospital for her son's wrongful death, and without her knowledge or consent, her attorney forged her signature on a settlement agreement for $15,000.  (*Id.* at p. 479)  The attorney then obtained the court's dismissal with prejudice of the action as to the hospital.  (*Ibid.*)  After the attorney kept the money, the plaintiff filed a claim with the State Bar's

client-security fund.  (*Id.* at p. 480.)  The State Bar paid the plaintiff $9,000 which represented her portion of the settlement.  (*Ibid.*)  The plaintiff then successfully moved to set aside the unauthorized dismissal and proceed with the lawsuit.  (*Ibid.*)

The hospital petitioned for a writ of mandate, and this court held the "client's *acceptance of money* from [the client security fund] operate[d] as a ratification of the settlement," and therefore barred the client from seeking to reopen the lawsuit.  (*Alvarado, supra,* 173 Cal.App.3d at p. 479, italics added.)  But on fairness principles, we declined to apply this rule to the case, and instead allowed the plaintiff to pursue the lawsuit seeking to set aside the settlement on the condition she return the $9,000.  (*Id.* at pp. 483-484.)

*Alvarado* applied the "well-settled rule of agency that a principal will be held to have ratified the agent's actions where he voluntarily accepts the benefits of the unauthorized transaction."  (*Alvarado, supra,* 173 Cal.App.3d at p. 481.)  But the court did not hold this is the sole basis for a ratification, and expressly recognized the existence of other avenues (including seeking to enforce an obligation) for establishing ratification.  In so doing, *Alvarado* observed that "unlike *Navrides*, [the plaintiff] did not sue [the defendant] to enforce the [unauthorized] settlement agreement," and instead sought to administratively obtain the settlement benefits, and *then she sought to have the dismissal set aside.*  (*Ibid.*)  The court explained that, "[w]here an attorney purports to accept a settlement offer without his client's consent, the client has two options.  First, the client may decide the unauthorized settlement was nonetheless a beneficial bargain and seek to ratify his attorney's acceptance.  Alternatively, the client may determine the settlement was not beneficial, seek to disavow it and proceed with a lawsuit."  (*Id.* at p. 480.)  The court found that the plaintiff had erroneously taken both

22

courses of action, stating the plaintiff could have "simply moved to set aside the dismissal. In such case, she would have still possessed her cause of action against [the hospital] but she would not have been entitled to the $9,000. Instead, however, she [first] obtained the $9,000 from the [State Bar] '*to which* [*she*] *would not be entitled unless the* [*settlement*] *were* [*affirmed*]. . . .' (Rest.2d Agency § 98, p. 252)." (*Id.* at p. 482, italics added.)

Under these principles, Chhatrala would not have ratified the Settlement Agreement if it brought a claim to rescind the agreement based on the allegation that its "rogue" agent conspired with Elajou Investment Group to enter into the settlement without Chhatrala's knowledge or approval. But it did not take this approach. Instead, it expressly ratified the Settlement Agreement when it sought to enforce the Note and deed of trust for its own benefit. The fact it was unsuccessful in doing so does not change the fact of ratification. Any remedy now lies against its agent or any other third party alleged to have engaged in wrongful conduct.

### 2. *Settlement Agreement Barred Oral Contract Claim*

Chhatrala alternatively argues that even if it was bound by the Settlement Agreement, its breach of oral contract claim is not barred by the agreement's release provisions because the claim fell outside the scope of the release. We disagree. The release broadly applies to "any matters relating to (i) the [Waterfall] Property . . . and (ii) any other agreement or transaction between or among any of the Parties . . . arising out of or relating to the [Waterfall] Property or against each other." The Settlement Agreement further provided the release "shall remain in effect notwithstanding the discovery or existence of any additional or different facts *or the occurrence of any such future events, circumstances or conditions.*" (Italics added.)

23

Under these provisions, Chhatrala's cause of action seeking to enforce the alleged oral agreement is barred. The alleged agreement pertained directly to Chhatrala's claim it was entitled to be paid for its investment in Elajou Investment Group for the purpose of assisting this entity's financial position in the Waterfall Property, the same claim that was the subject of the Settlement Agreement. The claim was thus barred by the release provisions covering all matters "any Party may now have *or hereafter have . . .* arising out of or relating to" the Waterfall Property or any of the claims pertaining to that property. (Italics added.)

And the alleged oral agreement does not fall within any of the exceptions to the release provision. Chhatrala did not allege the oral agreement concerned a breach of the Settlement Agreement; a breach of the Note or deed of trust; a dispute among TRX, Patel, and/or Chhatrala; a dispute among the parties to Zephyr's purchase agreement; or a dispute between Zephyr and the seller about the property development.

Additionally, the oral agreement claim is also barred by the Settlement Agreement's "Amendments" clause, which provides: "This Agreement may not be modified, changed, contradicted, added to, or altered in any way by any previous written or oral agreements or any subsequent oral agreements. This Agreement may be modified or amended only pursuant to an instrument in writing, executed and delivered on behalf of each Party."

The alleged oral agreement requiring Elajou Investment Group to pay Chhatrala a profit share constituted a modification of the promise in the Settlement Agreement that Elajou Investment Group execute a promissory note to Chhatrala or its designee for $1.79 million (with no profit share), and therefore was required to be in writing. In challenging this conclusion, Chhatrala argues that the Amendments provision does not apply "to a

24

*subsequent* oral promise, supported by *new* consideration, completely independent of the Note itself." Chhatrala does not cite to any language in the Amendments provision limiting its reach to amendments unsupported by new consideration, or explain how the alleged oral agreement is "independent" of the Note. Nor does Chhatrala identify any legal authority supporting this argument. Because the alleged oral agreement concerns and amends the Settlement Agreement's terms, the requirement that amendments must be in writing and signed by all parties bars this claim.[6]

IV. *Intentional Interference Claims*

In its fifth and sixth causes of action, Chhatrala alleged two interference claims against Zephyr: (1) intentional interference with contract; and (2) intentional interference with prospective economic advantage.

A. *Allegations*

On the intentional interference with contract claim, Chhatrala alleged Zephyr was aware of Chhatrala's written and oral contracts with Elajou Investment Group concerning its obligation to return Chhatrala's invested funds and to pay Chhatrala one-half of the profits "from [its] joint venture with Zephyr to redevelop and re-sell for a profit the Waterfall Property." Despite this awareness, Zephyr allegedly "withheld sums due and owing" to

---

[6]    Based on this conclusion, we do not reach the parties' arguments whether the alleged forbearance agreement constitutes adequate consideration for the alleged agreement or whether Chhatrala sufficiently alleged causation and damages from the alleged breach of this agreement.

We note also that Elajou Group, rather than Elajou Investment Group, was the party to the Settlement Agreement. However, Chhatrala does not challenge Elajou Investment Group's right to assert the agreement's release provisions. This is presumably because the release rights expressly applied to a party's principals, agents, and affiliates.

Elajou Investment Group, resulting in Elajou Investment Group being unable to "fulfil[ ] (in whole or in part) . . . [its] contracts with" Chhatrala.

On its interference with prospective economic relations claim, Chhatrala alleged it had a "legitimate expectation of a tangible economic advantage" based on Elajou Investment Group's agreement to return its investment and Mr. Elajou's oral agreement to pay one-half the profits received from Elajou Investment Group's joint venture with Zephyr. Chhatrala further alleged Zephyr knew of these expectations, but intentionally engaged in tortious conduct that was independently wrongful by committing fraud and breaching its fiduciary duties toward Elajou Investment Group, including by withholding $600,000 from Elajou Investment Group, improperly conditioned on its obtaining a release from Chhatrala.

B. *Analysis*

In its appellate briefs, Chhatrala challenges the demurrer based primarily on its argument that the Settlement Agreement's release provisions did not bar these tort claims.

We agree the Settlement Agreement did not preclude these claims. Civil Code section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." This code section prohibits predispute attempts to shield defendants from future liability for intentional torts, including intentional interference claims. (See *Farnham v. Superior Court* (1997) 60 Cal.App.4th 69, 74; *McQuirk v. Donnelley* (9th Cir. 1999) 189 F.3d 793, 796-797; *Spy Phone Labs LLC v.*

*Google Inc.* (N.D.Cal., Oct. 14, 2016, No. 15-CV-03756-KAW) 2016 WL 6025469, at *11.)

However, the claims are not viable on a separate ground asserted in Zephyr's demurrer: Chhatrala did not allege the required predicate element of an enforceable contract between itself and a third party or the likelihood of a prospective economic advantage.

To establish tort liability for interference with a contract, there must be an existing enforceable contract. (*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867, 879.) Chhatrala did not adequately allege this required fact, nor could it. As discussed, there was no binding, enforceable contract for Elajou Investment Group to pay Chhatrala the amounts under the Note and/or one-half the profits from the alleged joint venture between Elajou Investment Group and Zephyr. Under the Settlement Agreement and the attached Note, Falcon—and not Chhatrala—was the named payee and was the sole entity entitled to enforce the Note. The alleged oral agreement was not enforceable because it was barred by the release provisions and the written-amendment requirement of the Settlement Agreement.

We reach a similar conclusion on Chhatrala's tortious interference with prospective economic advantage claim. Although this claim does not require a legally binding contract (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1141), the plaintiff must plead and prove the defendant knowingly interfered with an " ' "economic relationship between the plaintiff and some third party, [which carries] the probability of future economic benefit to the plaintiff" ' " (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153).

Chhatrala alleged it had an expectation of economic advantage because Elajou Investment Group orally promised to pay it one-half of the profits from its joint venture with Zephyr. Because this alleged agreement is unenforceable, Chhatrala did not have a *legitimate* expectation of economic advantage. In its appellate briefs, Chhatrala does not identify any ground to support a probability of future economic benefit under circumstances where it failed to allege a viable written or oral contract.

V. *Money Had and Received Claim*

Chhatrala's seventh cause of action was titled "Common Count No. 1: Money Had and Received." (Capitalization and boldface omitted.) Chhatrala alleged Elajou Investment Group and Zephyr "became indebted to [Chhatrala] in the amount of $1,797,892.00, plus prejudgment interest and one-half of their profit from the disposition of the Waterfall Property in exchange for their respective receipt of [Chhatrala's] funds or the benefits afforded them by [Chhatrala's] funds, which were provided at [Elajou Investment Group's] request. Zephyr and [Elajou Investment Group] have [not paid the amounts owed]. . . . [¶] As such, [Chhatrala] is entitled to judgment against Defendants . . . in a sum exceeding $1,797,982.00 plus interest . . . ."

Generally, a party states a viable money had and received claim by alleging the defendant "is indebted to the plaintiff in a certain sum 'for money had and received by the defendant . . . .' " (*Schultz v. Harney* (1994) 27 Cal.App.4th 1611, 1623.) However, as with the Breach of Promissory Note cause of action, this claim is barred by the Settlement Agreement. In this cause of action, Chhatrala seeks funds to which it contends it was entitled based on its investment in Elajou Investment Group. This claim was

28

resolved in the Settlement Agreement, which contained a broad release of claims pertaining to this same subject.

We reject Chhatrala's contention the court erred because it overruled the demurrer to the second amended complaint on this identical claim. The court's prior ruling was not a final order and thus was subject to change. (*Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1156.) A trial court retains the authority to change its decision any time before judgment is entered. (*Ibid.*)

## VI. *Unjust Enrichment*

Chhatrala's eighth cause of action is against only Zephyr and is labeled "Common Count No. 2: Mistaken Receipt Resulting in Unjust Enrichment." (Capitalization and boldface omitted.) It alleges that Chhatrala paid Elajou Investment Group "money by fraud and mistake, which was then transferred to Zephyr. [¶] Zephyr did not have a right to that money and was aware of [Chhatrala's] funds having been provided to [Elajou Investment Group], and that [these] funds . . . served to maintain [its] interest in the Waterfall Property, from which Zephyr later benefitted to the tune of millions of dollars in profits in which it knew [Chhatrala] was entitled to share. [¶] [Chhatrala] reasonably expected to receive the return of the sums [Elajou Investment Group] owed to [Chhatrala] upon the successful sale of the Waterfall Property by Zephyr . . . . [¶] By [this] conduct . . . Zephyr has unjustly enriched itself to [Chhatrala's] detriment by retaining funds it knows [Chhatrala] is entitled to have repaid to it, including profits that Zephyr caused not to be distributed to [Chhatrala] because of Zephyr's fraud and breach of fiduciary duties."

Even assuming an unjust enrichment claim can be based on this alleged indirect receipt of benefits, this claim is not viable because it is barred

29

by the Settlement Agreement. A plaintiff may be entitled to recover restitution under an unjust enrichment theory if the defendant was enriched at the plaintiff's expense. (*Durrell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370; *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 389.) But recovery is not permitted under this theory if the parties have an enforceable express contract. (*Durrell*, at p. 1370.)

Chhatrala entered into a written settlement agreement with Zephyr settling claims pertaining to Chhatrala's investments relating to the Waterfall Property. We have found Chhatrala ratified the agreement by seeking to enforce and obtain the benefits of the agreement. Thus, as a matter of law, Chhatrala's unjust enrichment claim cannot succeed. Although Chhatrala alleges conduct that allegedly occurred after the Settlement Agreement was signed (withholding of monetary sums to Elajou Investment Group), the allegations pertain to the same claims that were settled and released in the Agreement. And, as with the money had and received claim, the court did not err in reconsidering its prior ruling overruling the demurrer on this cause of action.

## VII. *Fraudulent Transfer*

On the remaining cause of action, "Fraudulent Transfer," Chhatrala alleged it is a "creditor" of Zephyr and Elajou Investment Group, and these defendants are "debtors" under the Uniform Fraudulent Conveyance Act (see Civ. Code, §§ 3439.01, subds. (c) & (d), 3439.07), and therefore it is entitled to an order that the Waterfall Property be attached for its benefit (even though the property has been conveyed to a third party).

The court sustained a demurrer to this claim based on its finding Chhatrala is not a creditor within the meaning of the applicable statutes. In its opening brief, Chhatrala does not specifically challenge this ruling.

In its reply brief, Chhatrala argues the court erred in sustaining the demurrer on this cause of action because it ruled improperly on other unspecified claims. We reject this contention because we have found the court's rulings on the other claims were proper. Additionally, Chhatrala cites no authority to support its arguments, nor does it identify the legal elements of its fraudulent conveyance claim or explain how the alleged facts support each of the elements. It has thus forfeited any challenge to the court's ruling. When an appellant raises an issue " ' "but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' " (*Save Agoura Cornell Knoll v. City of Agoura Hills* (2020) 46 Cal.App.5th 665, 704, fn. 14.)

VIII. *Court's Order Granting Zephyr's Motion to Stay Discovery*

Chhatrala next contends the court erred in granting Zephyr's motion to stay discovery.

A. *Factual Background*

In December 2017, after filing its demurrer to the second amended complaint, Zephyr moved to stay discovery until after the court ruled on this demurrer. Zephyr argued it would incur significant costs in responding to the discovery sought by Chhatrala; there was a substantial likelihood it would prevail on the demurrer; and Chhatrala would not be prejudiced by a brief stay pending resolution of the demurrer. Zephyr said that staying discovery would be " 'in the interests of justice' because any possible benefit from [the discovery] before the resolution of the [demurrers] is clearly outweighed by the excessive burden, expense, and intrusiveness of that discovery."

Over Chhatrala's opposition, the court granted the motion. Because Chhatrala has not cited to the court's order, nor have we been able to locate it

in the 2,228-page record, we do not know the court's precise reasoning for the order.

## B. *Analysis*

Generally, a party is entitled to conduct discovery to obtain facts to support a pleading amendment. (See *Mattco Forge, Inc. v. Arthur Young & Co.* (1990) 223 Cal.App.3d 1429, 1436, fn. 3.) However, a court retains broad discretion to impose limitations on the timing and scope of discovery. (See *Pratt v. Union Pacific Railroad Co.* (2008) 168 Cal.App.4th 165, 181.) Thus, after granting leave to amend, a court may limit discovery if there is a strong likelihood defendants will be dismissed from the action and the discovery sought is burdensome and may become unnecessary. (See *Terminals Equip. Co. v. City and County of San Francisco* (1990) 221 Cal.App.3d 234, 247.) A court may make discovery orders to protect a party from "undue burden and expense" and to promote the "interests of justice." (Code Civ. Proc, §§ 2031.060, 2017.020, subds. (a), (b).)

" ' "Management of discovery lies within the sound discretion of the trial court." ' " (*O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 561.) Thus, appellate review is highly deferential. If " ' "there is a basis for the trial court's ruling and the evidence supports it, a reviewing court will not substitute its opinion for that of the trial court. [Citation.]" [Citation.] The trial court's determination will be set aside only when it has been established that there was no legal justification for the order granting or denying the discovery in question.' " (*Ibid.*)

Under these authorities, the court did not abuse its discretion. Shortly before the court granted Chhatrala's motion for leave to file an amended complaint, Chhatrala's counsel assured the court it could do so without any additional discovery. Chhatrala then changed its position and sought to

conduct discovery before the court ruled on the demurrers. In response to Zephyr's motion, the court temporarily stayed the discovery until the court had the opportunity to rule on the demurrers.

Chhatrala argues the court abused its discretion because Chhatrala was "kept in the dark" about its "rogue consultant" and it needed the discovery to respond to defendants' arguments that Chhatrala ratified the Settlement Agreement, despite Patel's alleged unauthorized conduct. However, Chhatrala does not explain why it could not have conducted this discovery earlier or how discovery against Zephyr would have provided necessary information about Patel's actions. Additionally, Chhatrala's ratification was based primarily on *Chhatrala's own action* in filing the complaint seeking to enforce the Settlement Agreement and the attached Note and deed of trust. Chhatrala does not state how information *from Zephyr* was needed to allege additional relevant facts on this issue.

Chhatrala also directs us to the court's statement at the demurrer hearing that it was ruling on a demurrer and therefore it did not "want to hear anything outside" the pleading and the matters judicially noticed. This statement does not show trial court error. The court's statement reflected a proper observation that its review was limited to evaluating the pleadings and matters that could be judicially noticed.

The court did not abuse its broad discretion in imposing a limited stay on discovery, and Chhatrala has not shown prejudice resulting from the stay.

## IX. *Leave to Amend*

An appellate court must reverse a judgment sustaining a demurrer if there is a reasonable possibility the defect can be cured by amendment. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) An appellant has the burden to show it can amend the complaint to remedy the deficiencies

in the existing complaint. (*Savea v. YRC Inc.* (2019) 34 Cal.App.5th 173, 178.) To meet this burden, the appellant must " ' " 'clearly and specifically set forth . . . [the] factual allegations' " ' " that will establish a viable cause of action. (*Baldwin, supra*, 1 Cal.App.5th at p. 559; accord, *Aghaji v. Bank of America, N.A.* (2016) 247 Cal.App.4th 1110, 1118-1119.)

Chhatrala has not met this burden. In its opening brief, it did not identify any new factual allegations it could add to overcome the pleading deficiencies. In its reply brief, Chhatrala argues leave to amend was improperly denied as to Elajou Investment Group because its counsel "informed the trial court" at the final demurrer hearing that "[Mr.] Elajou's deposition testimony established alter ego as to each and every one of the Elajou [p]arties named in the case." However, Chhatrala does not explain how this deposition testimony materially adds to its allegations given that the alter ego allegations already exist in the third amended complaint. The fact that Chhatrala could establish "alter ego as to each and every one of the Elajou Parties" would not change the conclusion that Chhatrala cannot allege a viable claim.

Regarding its claims against Zephyr, Chhatrala contends it was "significantly hamstrung by the actions of its rogue agent," in attempting to plead a viable claim and complains about the temporary discovery stay, but again does not identify any facts it could plead to overcome the deficiencies in the current pleading. It states only that the court "refused [to provide it with] any opportunity to amend, including after . . . deposing [Mr.] Elajou and advising the trial court Chhatrala could prove alter ego as a matter of law based on [Mr. Elajou's testimony]." It also argues that "Given the opportunity to present its claims and evidence to a jury, Chhatrala is confident it will recover against each of the Respondents on all claims

34

asserted." But again Chhatrala does not identify any facts it could add to its pleading that would show a viable claim.

## X. *Attorney Fees Order*

After entry of judgment, the court awarded attorney fees of $227,734.32 to Zephyr and $75,262.51 to the Elajou parties (Elajou Investment Group, Mr. Elajou, and Broadway). The court found these parties were entitled to prevailing party attorney fees under Civil Code section 1717 (section 1717) based on fee provisions in the Settlement Agreement and the Note.

On appeal, Chhatrala contends defendants were not entitled to attorney fees under the contract provisions. We reject these arguments as to the Elajou parties. But we reverse the award as to Zephyr because the claims against Zephyr were not "on a contract" or within the scope of the relevant attorney fees provision.[7]

### A. *Background Summary*

The Settlement Agreement's attorney fees provision states:

> "If litigation is commenced to enforce any of the provisions of this Agreement or to recover damages for breach of any of the provisions of this Agreement, the prevailing Party shall be entitled to recover attorneys' fees actually incurred."

The Note's attorney fees provision states:

> "In the event it should become necessary to employ counsel to enforce this Note, [Elajou Investment Group] agrees to pay the reasonable attorneys' fees and costs of the Payee [defined in the Note as Falcon], irrespective of whether suit is brought, including, without limitation, any and all pre-judgment and post-judgment attorneys' fees and costs

---

[7] Because Chhatrala did not clearly raise the scope issue in its opening appellate brief, we provided Zephyr the opportunity to file a supplemental brief on this issue. We have considered this brief in reaching our conclusions.

incurred . . . .  In addition [Elajou Investment Group] agrees to pay for all of Payee's other out-of-pocket costs incurred in connection with the enforcement of [the] Note."

After judgment was entered in their favor, both Zephyr and the Elajou parties moved for attorney fees under these provisions and section 1717.  In opposing the motions, Chhatrala argued it had not sought to enforce either contract against defendants; no authorized representative had signed the Settlement Agreement; it was not a named party on the Note; and the amount of the requested fees was unreasonable.  As to Zephyr, Chhatrala also argued that none of its claims were " 'on the contract' " because it brought only noncontract claims against Zephyr and did not seek to enforce the Note or Settlement Agreement against Zephyr.  Chhatrala also maintained that Zephyr's assertion of a defense based on the Settlement Agreement did not trigger a right to contractual attorney fees.

At the hearing on the motion, Chhatrala's counsel focused solely on Zephyr's attorney fees request, arguing Zephyr was not entitled to recover fees because Chhatrala "did not sue Zephyr on the contract in any respect." Counsel said Chhatrala did not assert any claims "that trigger any fee right under [the] Settlement Agreement and certainly not the [N]ote. . . .  [I]t is not even a close call."  Zephyr's counsel responded that Zephyr had "litigated this case by enforcing [its] rights under [the Settlement Agreement and Note]. And according to the case law, that is on the contract."

After considering the parties' arguments, the court (Judge Ronald Frazier[8]) granted both motions.  Quoting from Judge Lewis's minute order sustaining the demurrers, Judge Frazier found the claims against defendants

---

8      Judge Frazier presided over the motions because Judge Lewis had since retired.

36

were "on a contract" because " 'all causes of action—notwithstanding their label—are claims pursuant to the promissory note and subject to the settlement agreement.' "  The court also found apportionment was not required because the claims as to each party were so "intertwined" that it would not be practical or possible to separate the time into compensable and noncompensable units.  As to amounts, the court found Zephyr was entitled to $227,734.32 (reducing its claimed fees by about $50,739) and the Elajou parties were entitled to their claimed fees of $75,262.71.

## B. *Analysis*

### 1. *General Principles*

We review the propriety or amount of an attorney fees award for abuse of discretion.  (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*)).  But we independently review whether there is a legal basis for an attorney fees award.  (*Ibid.*)

Zephyr and the Elajou parties relied exclusively on section 1717 as the basis for their attorney fees request.  Section 1717 governs contractual prevailing-party attorney fees, and provides that a contractual attorney fees clause is reciprocal, meaning the prevailing party has a right to attorney fees even if the contract identifies only the other party as the party entitled to fees.  (*PLCM Group v. Drexler, Inc.* (2000) 22 Cal.4th 1084, 1090-1091.)  Although generally only signatories are subject to an attorney fees provision, under certain circumstances (as discussed below) a party may enforce an attorney fees provision against a nonsignatory.  (See *Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 382 (*Real Property*).)

Section 1717 broadly applies when an action is brought "on a contract" containing an attorney fees provision.  (§ 1717, subd. (a).)  However, " '[b]efore section 1717 comes into play, it is necessary to determine

37

whether' " the contractual claims fall within " 'the scope of the attorney fee agreement.' " (*Mountain Air, supra,* 3 Cal.5th at p. 752.)  In doing so, courts apply traditional contract interpretation rules, and glean the parties' intentions mainly from the language of the provision.  (*Ibid.*)  Once interpreted, the court must determine whether the plaintiff's claims fall within the contractual provision by considering " 'the pleaded theories of recovery, the theories asserted and the evidence produced at trial, if any, and also any additional evidence submitted on the motion . . . .' " (*Id.* at pp. 760-761.)  In conducting the latter analysis, a court should not "take an overly formalistic approach" and instead the court should seek to determine whether as a practical matter a claim comes within the scope of the attorney fees provision.  (*Id.* at p. 760.)

### 2. *Elajou Parties*

Chhatrala brought two contract-based claims against the Elajou parties: "Breach of Promissory Note" and "Foreclosure of Collateral" (the first two causes of action).  These claims were brought against Elajou Investment Group and Mr. Elajou, and sought to enforce the Note (which was attached to, and incorporated within, the Settlement Agreement), and to enforce its underlying security.

These claims fell squarely within the Note's attorney fees provision.  The Note stated that a party was entitled to attorney fees if "it should become necessary to employ counsel *to enforce this Note . . . .*"  (Italics added.)  Because we have found the breach of contract and enforcement of the collateral claims were attempts to enforce the Note, these claims fall within the scope of the attorney fees clause.  Chhatrala argues that it did not bring a breach of contract claim for enforcement of the Note because these documents were identified in its pleadings merely as evidence to support its claims.  We

rejected the same argument in Part III.B.1 above. As explained, contrary to Chhatrala's assertions, the claims against Elajou Investment Group and Mr. Elajou plainly sought to enforce the Note and the accompanying deed of trust.

Chhatrala alternatively contends the attorney fees award was improper as to the Elajou parties because Chhatrala did not authorize the signing of the Settlement Agreement and was not a party to, and did not sign, the Note. With respect to the Settlement Agreement, we have concluded that even assuming Chhatrala did not authorize the signing of the agreement, it is bound by the agreement under a ratification theory.

With respect to the Note, Chhatrala is correct that it was not a signatory. The parties to this agreement were Elajou Investment Group (as the "Maker" of the Note) and Falcon (as "Payee" on the Note). However, the courts have held a nonsignatory plaintiff who unsuccessfully seeks to enforce a contract against a signatory defendant can be liable under an attorney fees clause *if* the plaintiff "would have been entitled to its fees" if it had prevailed. (See *Real Property*, *supra*, 25 Cal.App.4th at p. 382; *Sessions Payroll Mgmt. Inc. v. Noble Construction* Co (2000) 84 Cal.App.4th 671, 674, 678-680 (*Sessions*).)

This condition was satisfied here. In opposing the demurrers, Chhatrala maintained it had a right to enforce the Note because it was the true or actual Payee and/or it was a third party beneficiary. Under either theory, it would have been entitled to fees if it had prevailed.

In arguing it could not have recovered attorney fees if it had prevailed, Chhatrala relies on *Sessions*, *supra*, 84 Cal.App.4th 671. In *Sessions*, the trial court awarded the defendant attorney fees against a nonsignatory plaintiff who unsuccessfully attempted to enforce a contract against the defendant based on its claim it was a third party beneficiary of the contract.

39

(*Id.* at p. 674.)  The Court of Appeal reversed, finding the plaintiff could not have recovered fees had it prevailed on this theory.  (*Ibid.*)  The court reasoned that the contractual language reflected the parties' intent to include only the contracting parties as potential beneficiaries of the attorney fees clause.  (*Id.* at pp. 674, 680-681.)  Noting the attorney fees provision permitted recovery " '[i]n the event it becomes necessary for *either party* to enforce the provisions of this Agreement,' " the court found " '[e]ither' refers only to the two parties to the contract . . . " and that if the parties had "wanted to include someone else, their contract would have referred to 'any' party."  (*Id.* at p. 681.)  The court also found it significant that the contract specifically stated " '[e]xcept as specifically prescribed herein, *this Agreement shall not create any rights of or confer benefits upon, third parties*.' "  (*Id.* at p. 680.)

This case is different.  Most important, Chhatrala did not seek to enforce the Note solely on a third party beneficiary theory.  It claimed it was the actual payee with rights to enforce the Note because it was the party that allegedly invested the funds with the Elajou parties.  Had Chhatrala prevailed on its claim that it was the party eligible for payment under the Note, it would have been entitled to contractual fees as the party that enforced the Note.  Additionally, unlike *Sessions*, the Note's attorney fees clause did not manifest the parties' intentions to exclude nonsignatories from recovering attorney fees.  To the contrary, the Note stated it applied "In the event it should become necessary to employ counsel to enforce this Note," without naming the particular parties that would be required to employ counsel to trigger coverage.

Chhatrala also suggests the Elajou parties' attorney fees award was improper because Chhatrala did not reassert the contract claims after the

40

court sustained the demurrer to the second amended complaint.  Even if this were true, the record reflects Chhatrala vigorously litigated the propriety of these causes of action through the time of the court's order on the second amended complaint.  On appeal, Chhatrala does not contend the court should have limited the fees only to this time period.  Thus, any argument on this ground is forfeited.  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

### 3. *Zephyr*

Chhatrala did not name Zephyr as a party in its contract claims seeking to enforce the Note or its underlying security.  Chhatrala instead asserted three tort causes of action (fraudulent conveyance and the two intentional interference claims) and the two common-count causes of action (money had and received and unjust enrichment).[9]  In these causes of action, Chhatrala sought to recover from Zephyr the funds it allegedly invested with the Elajou parties plus other amounts allegedly promised to Chhatrala by the Elajou Investment Group and/or Mr. Elajou.

By its terms, section 1717 applies only to actions "on a contract" and to fees "which are incurred *to enforce that contract*."  (§ 1717; see *Santisas v. Goodin* (1998) 17 Cal.4th 599, 615 (*Santisas*); *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 708 (*Exxess Electronixx*) ["section 1717 . . . makes clear that a tort claim does not 'enforce' a contract"]; *Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, 273 (*Windsor Pacific*) ["section 1717 is inapplicable . . . to noncontract claims"].)

---

[9]    For a very brief period, Chhatrala also asserted the breach of oral agreement against Zephyr, but then dismissed this claim.  Chhatrala's fraudulent conveyance claim can also be viewed as a statutory (rather than a tort) cause of action, but the same fees analysis applies under either theory.

In determining whether a claim is "on a contract," the label on the claim is not dispositive, and instead the court must look to the substance of the cause of action. (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 240-241 (*Barnhart*); see *Hyduke's Valley Motors v. Lobel Financial Corp.* (2010) 189 Cal.App.4th 430, 436.) In *Barnhart*, this court surveyed the existing authority and articulated rules to assist in evaluating whether a noncontract claim was "on a contract" for purposes of section 1717. Specifically, we stated a claim is " 'on a contract' " if "(1) [the claim] 'involves' an agreement, in the sense that [the claim] arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement, and (2) the agreement contains an attorney fees clause." (*Barnhart*, at pp. 241-242.) Applying these principles, the *Barnhart* court found a promissory estoppel claim asserted as an alternative to a contract cause of action was not "on the contract," reasoning that "unlike contract law, which enforces promises because the parties have bargained for and agreed to be bound by them, promissory estoppel is an 'alternative theory of recovery' that enforces promises because . . . equity demands enforcement to avoid injustice." (*Id.* at p. 243).

In this case, Chhatrala did not assert a contract claim against Zephyr based on the Settlement Agreement or Note, but sought to obtain a similar result in asserting its tort and common count claims (recovery of the $1.79 million identified in the Note) plus additional profit-sharing amounts. These claims were not on a contract. Neither the Note nor the Settlement Agreement was the factual predicate for Chhatrala's claims against Zephyr. Zephyr was not a party to the Note, and the Settlement Agreement was not part of Chhatrala's affirmative claims against Zephyr. Chhatrala instead

brought these claims on the ground that even if Chhatrala could not enforce the Note, it was entitled to recover its investment based on alternate legal theories (e.g., tort, common count, equitable, statutory). As with the promissory estoppel claim in *Barnhart*, Chhatrala's alternate *theories of recovery* were not "on the contract." Had Chhatrala been successful against Zephyr on one of these theories, it would not have been entitled to attorney fees against Zephyr.[10]

We find unpersuasive Zephyr's reliance on *Eden Township Healthcare Dist. v. Eden Medical Center* (2013) 220 Cal.App.4th 418 and *Turner v. Schultz* (2009) 175 Cal.App.4th 974. Each of those decisions involved a plaintiff who unsuccessfully *brought a lawsuit seeking to invalidate the contract through a declaratory relief action*, and both courts found attorney fees were properly awarded because the plaintiff's action specifically sought to enforce (or avoid enforcement of) the contract. (*Eden Township*, at pp. 420-421, 426-428; *Turner*, at pp. 976, 979-980.) Chhatrala did not sue *Zephyr* to obtain a declaration that the Note or Settlement Agreement was valid or invalid. It instead brought noncontract claims against Zephyr in seeking to hold Zephyr responsible for Elajou Investment Group's failure to pay funds to which it believed it was entitled. Unlike *Eden* and *Turner*, these claims were not "on a contract" under section 1717, nor (as explained below) did they

---

10     We note that if a contractual attorney fees provision is phrased broadly enough, it can support an attorney fees award for prevailing on a tort claim, although the claim would not be governed by section 1717. (*Santisas*, *supra*, 17 Cal.4th at pp. 608, 615; *Exxess Electronixx*, *supra*, 64 Cal.App.4th at p. 708.) Zephyr relied only on section 1717 in seeking fees, and did not contend the attorney fees provisions governed tort claims. In any event, we would reject the argument because (as explained below) the language of the fees provision is limited to contract actions (actions seeking to enforce the contracts or to obtain damages for a breach of the Settlement Agreement).

come within the attorney fees provisions permitting fee recovery for the *enforcement* of the contracts.

In a separate argument, Zephyr contends it is entitled to recover its fees because it successfully demurred to the pleadings by relying on provisions in the Settlement Agreement (including the release, integration, and written-amendment clauses). The issue whether a defense based on a contract triggers an entitlement to contractual attorney fees depends on the specific language of the attorney fees provision. (*Mountain Air*, *supra*, 3 Cal.5th at pp. 751-761.) Before examining Zephyr's argument in the context of the attorney fees provision in the Settlement Agreement, it is helpful to summarize how California courts have interpreted similar attorney fees provisions. (See *Mountain Air*, *supra*, 3 Cal.5th 744; *Exxess Electronixx*, *supra*, 64 Cal.App.4th 698.)

In *Exxess Electronixx*, a commercial tenant sued its broker alleging the broker failed to disclose defects in the building. (*Exxess Electronixx*, *supra*, 64 Cal.App.4th at pp. 702-704.) After a dismissal, the broker moved for attorney fees under a lease provision permitting an attorney fees award if a party or broker "*brings an action or proceeding to enforce the terms hereof or declare rights hereunder . . . .*" (*Id.* at p. 702, italics added.) As one of its arguments, the broker maintained it was entitled to recover under this provision because it prevailed on the tenant's tort claims (fraud and breach of fiduciary duty) and the contractual fee provision was triggered because its *defense* to the tenant's claims was based on an as-is provision in the parties' contract. (*Id.* at pp. 711-712) The Court of Appeal rejected this argument, finding this defense did not come within the language of the attorney fees clause. The court explained: "While the 'as is' defense may have had the effect of 'enforc[ing] the terms' of the lease or 'declar[ing] rights [there]under,'

44

[the broker] did not 'bring[ ] an action or proceeding' to accomplish those goals. *Under any reasonable interpretation of the attorneys' fee provision, we cannot equate raising a 'defense' with bringing an 'action' or 'proceeding.' By asserting a defense [to the plaintiff's claims, the broker] did not bring an action or proceeding to enforce the lease or to declare rights under it.*" (*Id.* at p. 712, italics added; accord *Gil v. Mansano* (2004) 121 Cal.App.4th 739, 741 (*Gil*).)

Several years later, another Court of Appeal reached a different conclusion in interpreting a similar attorney fees provision. (*Windsor Pacific, supra,* 213 Cal.App.4th at pp. 273-276.) The *Windsor Pacific* court held "an attorney fee clause providing for a fee award to the prevailing party in 'any action or proceeding to enforce or interpret' a contract applies not only where the plaintiff's allegations in the complaint seek to enforce or interpret the contract, *but also where the defendant seeks to do so by asserting an affirmative defense raised in its answer.*" (*Id.* at p. 266, italics added.)

Four years later, the California Supreme Court noted the conflict between *Exxess Electronixx* and *Windsor Pacific* and resolved the split in favor of *Exxess Electronixx*, expressly disapproving *Windsor Pacific*'s contrary language. (*Mountain Air, supra*, 3 Cal.5th at pp. 750-751, 756, fn. 3.)

In *Mountain Air*, the plaintiff (a seller) brought an action against the defendant (a prospective purchaser) seeking to enforce a repurchase agreement, and the defendant successfully relied on a second agreement (the option agreement) to establish it was not required to purchase the property. (*Mountain Air, supra*, 3 Cal.5th at pp. 748-749.) The defendant sought attorney fees under an attorney fees provision in the option agreement that stated in relevant part, " 'If *any legal action or any other proceeding* . . . is brought for the enforcement of this Agreement . . . , the prevailing party shall

45

be entitled to recover reasonable attorney fees . . . .' " (*Id.* at p. 752.) The defendant agreed the plaintiff's action was not "brought for the enforcement" of the option agreement because the agreement would have precluded the plaintiff's claims. (*Id.* at p. 757.) But the defendant argued it was entitled to recover attorneys fees under the option contract's clause because it had successfully defended the action based on a provision in the option contract and its affirmative defense constituted a *"legal action . . . 'brought for the enforcement' of the option agreement."* (*Id.* at p. 757, italics added.)

In rejecting this argument, the California Supreme Court applied traditional contract interpretation rules, and determined that the word " 'action' is synonymous with a lawsuit" and that although "an affirmative defense is a 'real *part of* any action' [citation], it does not, in and of itself, constitute an 'action' for purposes of recovering attorney fees." (*Mountain Air*, *supra*, 3 Cal.5th at p. 753.) The court also emphasized "[t]he inclusion of the word 'brought' is . . . consistent with a narrow reading" of the clause, to mean that the parties intended the provision to apply to a plaintiff's filing of an action rather than a defendant's "plead[ing], assert[ing], or rais[ing]" an affirmative defense in the action.[11] (*Id.* at pp. 754-755.)

Consistent with *Exxess Electronixx* and *Mountain Air*, Chhatrala's claims against Zephyr did not come within the scope of the attorney fees

_____

[11] The *Mountain Air* attorney fees provision additionally contained a clause stating it also applied if a legal action is brought "because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement . . . ." (*Mountain Air, supra*, 3 Cal.5th at p. 752, italics omitted.) Over a dissent, the majority found the defendant was entitled to attorney fees under this second clause because the plaintiff brought its action " 'because of an alleged dispute . . . in connection with' the option agreement." (*Id.* at p. 759.) This holding is inapplicable here because the governing fees provisions do not contain a similar second clause.

46

provision in the Settlement Agreement. Similar to those cases, the attorney fees clause in the Settlement Agreement provides for prevailing party attorney fees "[i]f litigation is *commenced* to *enforce* any of the provisions of this Agreement . . . ." (Italics added.) "Commenced" is analogous to the terms "brought" or "bring" interpreted in *Mountain Air* and *Excess Electronixx*, and similarly requires the party to have filed or started the litigation or action. By asserting a defense to Chhatrala's tort and common counts claims, Zephyr did not file or start "*the litigation*" to compel compliance with the Settlement Agreement. (Italics added.) Likewise, as in *Mountain Air*, Chhatrala did not seek to enforce the documents with the attorney fees provisions (Settlement Agreement or the Note) *against Zephyr*.

In its supplemental brief, Zephyr contends "Chhatrala commenc[ed] litigation to enforce recovery under the . . . Note," which was the "primary benefit of the Settlement Agreement" and "Chhatrala's complaint . . . alleged facts regarding whether [the Note] was operative and enforceable . . . ." This contention applies to Chhatrala's claims against the Elajou parties, but it is inapplicable to Chhatrala's claims against Zephyr. Chhatrala did not commence litigation against Zephyr *to enforce the terms of the Note or Settlement Agreement*. Zephyr does not cite to any authority supporting that a party's claims against one defendant that fall within an attorney fees provision triggers a codefendant's right to recover fees merely by its status as a codefendant.

In this regard, we find unhelpful Zephyr's reliance on an allegation in Chhatrala's complaint that all defendants are agents and/or alter egos of Elajou Investment Group and Mr. Elajou. Zephyr argues that "[i]f Chhatrala had prevailed on its claim that Zephyr was the alter ego of the [Elajou parties], it would have been entitled to recover its fees from Zephyr arising

47

from the allegations relating to the [Elajou parties'] breaches of the Settlement Agreement and . . . Note." In support Zephyr cites *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124 (*Reynolds Metals*) and decisions applying its principles.

These cases are materially distinguishable. In *Reynolds Metals*, the unsuccessful plaintiff had brought an action against nonsignatories *based on their status as alter egos of the contracting party*. (*Reynolds Metals*, *supra*, 25 Cal.3d at p. 127.) The high court held these nonsignatory defendants were entitled to attorneys fees because "[h]ad plaintiff prevailed on its cause of action claiming defendants were in fact the alter egos of the [contracting party] [citation], defendants would have been liable on the [contract]." (*Id.* at p. 129.)

Under *Reynolds Metals*, if Chhatrala had brought a breach of contract claim against Zephyr on an alter ego basis, and Zephyr had prevailed, Zephyr would be entitled to attorney fees. This is because if Chhatrala had prevailed, it would have been entitled to obtain attorney fees against Zephyr as the alter ego of the contracting party. But this situation did not occur. Critically, Chhatrala did not allege a breach of contract action against Zephyr on an alter ego theory or any other ground. Absent such claim, *Reynolds Metals'*s holding and reasoning are inapplicable.

Several days before oral argument, Zephyr alerted us to new authority on the alter ego issue filed several days earlier. (*347 Group, Inc. v. Philip Hawkins Architect, Inc.* (2020) 58 Cal.App.5th 209 (*347 Group*).) At oral argument, Zephyr's counsel relied on this case to support Zephyr's attorney fees claim. This decision is inapposite.

In *347 Group*, the plaintiff brought a contract claim against a corporate entity (Architect, Inc.) seeking to recover amounts owed under the parties'

48

contract. (*347 Group*, *supra*, 58 Cal.App.5th at p. 212.) The plaintiff also sued Philip Hawkins "seeking to establish Hawkins . . . [was an] alter ego[ ] of Architect, Inc. *and liable under [the plaintiff's] contract with Architect, Inc.*" (*Ibid.*, italics added.)

After Architect Inc. declared bankruptcy and defaulted, the plaintiff alleged four causes of action against Hawkins: breach of contract, common counts, fraudulent conveyance, and conspiracy. (*347 Group*, *supra*, 58 Cal.App.5th at p. 212.) A default judgment was entered against Architect Inc., and the parties then stipulated to dismiss plaintiff's contract causes of action against Hawkins. (*Ibid.*) "Following trial, the court ruled Hawkins . . . [was] *not liable as [an] alter* ego[ ] *to pay the amount owing under the contract between Architect, Inc. and 347 Group* under either a fraudulent conveyance or conspiracy theory." (*Ibid.*, italics added.) The trial court then denied Hawkins's attorney fees motion, finding it prevailed only on tort claims.

The Court of Appeal reversed, relying on a recent decision (*MSY Trading Inc. v. Saleen Automotive, Inc.* (2020) 51 Cal.App.5th 395) that upheld an attorney fees award in an action by a plaintiff that unsuccessfully sought to hold the nonsignatory defendant liable for a breach of contract under an alter ego theory. (*347 Group*, *supra*, 58 Cal.App.5th at pp. 214-215.) In *MSY Trading*, the issue was procedural: does *Reynolds Metal*s apply to support a section 1717 attorney fees award to a party alleged to be liable for contract damages under an alter ego theory if the alter ego claim is brought in a later action, rather than in the initial action? (*MSY Trading*, at pp. 401-404.) The court answered this question in the affirmative, finding if "the rule were otherwise, wasteful proceedings would be incentivized." (*Id.* at p. 403.)

The *347 Group* court "quote[d] heavily from the [*MSY Trading*] opinion to explain why Hawkins [was] entitled to attorney fees." (*347 Group*, *supra*, 58 Cal.App.5th at p. 214.) After this lengthy quote, the *347 Group* court concluded that the fact the plaintiff's alter ego claim was asserted in a proceeding *after* the default judgment against Architect Inc. did not alter the general rule that a defendant is entitled to attorney fees upon prevailing on an alter ego theory that sought to hold that party liable for a signatory party's breach of contract. (*Id.* at p. 215.) The court explained: "[A] postjudgment . . . action to establish alter ego liability for a judgment on a contract is itself an action on the contract, regardless of which procedural vehicle the plaintiff employs. (*MSY Trading*[,] . . . *supra*, 51 Cal.App.5th at p. 403.) [¶] Accordingly, because [the plaintiff's] alter ego action was on the contract and Architect, Inc., the party Hawkins was alleged to be the alter ego of, was liable for attorney fees under the contract, Hawkins is entitled to attorney fees under the contract." (*347 Group*, at p. 215; see *Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 823.)

This case is different. Chhatrala did not allege Zephyr was liable under the Note as an alter ego of the Elajou Investment Group or Mr. Elajou. *347 Group* and *MSY Trading* extended *Reynolds Metals'* reasoning to the situation where the alter ego claim was brought later, after entry of the judgment against the contracting party. But they do not support an extension of *Reynolds Metals* to a situation where the defendant was never alleged to be the alter ego of the contracting party *on the breach of contract cause of action*. Although the *347 Group* plaintiff brought tort claims to support its alter ego theory, the court made clear that the crux of the action was that after the corporate defendant's default, the plaintiff sought to establish Hawkins was an "alter ego[ ] of Architect, Inc., *and liable under the*

50

*contract with Architect, Inc."* (*347 Group*, *supra*, 58 Cal.App.5th at p. 212, italics added.) A similar claim was not made in this case. Further, the *347 Group* court never explained or discussed whether the fraudulent conveyance claim was "on the contract"; instead it focused on the substance of the alter ego allegations that defendant was liable on the contract and the timing of those claims. A case is not authority for a proposition not considered. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1134.)

Taking a different tack, Zephyr contends Chhatrala forfeited its right to argue its claims did not fall under the Settlement Agreement's attorney fees provision because Chhatrala did not raise the "scope" issue in the trial court proceedings. On our review of the record, we are satisfied Chhatrala did raise this issue below. Although it did not refer to *Mountain Air* in its trial court briefs, Chhatrala cited to *Exxess Electronixx* and strenuously argued its claims against Zephyr were not "on the contract" and did not fall under the contractual attorney fees provision. Additionally, contrary to Zephyr's contentions, the fact the trial court did not specifically rule on this scope issue is immaterial because our review is de novo. (See *Mountain Air*, *supra*, 3 Cal.5th at p. 751.) There were no disputed factual issues regarding the language of the attorney fees provisions or the nature of the claims Chhatrala asserted against Zephyr. We thus conduct an independent review and are not required to defer to the trial court's express or implied findings. (*Ibid.*)

In raising its forfeiture argument, Zephyr also notes Chhatrala has never argued its claims did not fall within the second part of the attorney fees provisions ("If litigation is commenced . . . *to recover damages for breach of any of the provisions of this Agreement,*" italics added). However, it is clear that Chhatrala did not seek damages against Zephyr for breach of the

51

Settlement Agreement, and Zephyr has never suggested otherwise. Therefore the fact that Chhatrala did not specifically raise this issue does not constitute a forfeiture of its contention the court erred in awarding attorney fees.

Applying the plain meaning of the terms in the Settlement Agreement's attorney fees provision, neither Chhatrala's claims against Zephyr nor Zephyr's assertion of its contract defenses satisfied the requirement that the litigation was "commenced to enforce any of the provisions of [the Settlement] Agreement." (See *Mountain Air, supra*, 3 Cal.5th at pp 751-756; *Exxess Electronixx, supra*, 64 Cal.App.4th at p. 712; *Gil, supra*, 121 Cal.App.4th at p. 741.)

## DISPOSITION

Judgment affirmed. The May 16, 2019 attorney fees order is affirmed in part and reversed in part. The order is affirmed as to the attorney fees awarded to defendants Elajou Investment Group LLC, Juma Elajou, and Broadway 87CDev, LLC (Elajou parties). The order is reversed as to defendant Zephyr Partners-RE, LLC (Zephyr). The court is directed to enter a new order denying Zephyr's motion for attorney fees. The court should reflect this ruling in the final judgment that was amended to include the court's May 16, 2019 rulings.

Appellant is ordered to pay the costs borne by the Elajou parties. Appellant and Zephyr to bear their own costs.


HALLER, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.